UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK D. ADAMS,

Plaintiff,

v.

S&D CARWASH MANAGEMENT, LLC, et al,

Defendants.

No. 2:25-cv-1290 DC AC PS

FINDINGS AND RECOMMENDATIONS

Plaintiff paid the filing fee and is proceeding in this matter pro se; pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). On July 10, 2025, defendants filed a motion to compel arbitration. ECF No. 11. That same day, defendants filed a motion to dismiss. ECF No. 12. The undersigned held the motions in abeyance and set an evidentiary hearing on the motion to compel arbitration. ECF Nos. 31, 33. The parties were ordered to submit status reports by September 3, 2025. ECF No. 31. Both parties filed reports. ECF No. 34, 37. Plaintiff also filed a motion to continue the hearing to conduct limited discovery. ECF No. 36. On September 5, 2025, the undersigned vacated the evidentiary hearing and ordered the parties to provide supplemental briefing on the issue of discovery. ECF No. 38. On November 5, 2025, the undersigned granted plaintiff's request for limited discovery in part, requiring (1) that defendants file and serve a declaration from a Paycom custodian of records

addressing the issues outlined in defendants' statement (ECF No. 40 at 4-5), and (2) allowing plaintiff to submit a supplemental Request for Leave to Propound Specific Discovery. ECF No. 41 at 3. Defendants submitted the required declaration on April 27, 2026. ECF No. 50. Plaintiff filed a "Notice of Noncompliance" (ECF No. 51) which the court reviewed and construed as both an opposition to the declaration and a Request for Leave to Propound Specific Discovery as offered by the court's prior order. ECF No. 53. Defendants opposed the Request. ECF No. 52.

Having reviewed the submissions before the court, the undersigned concludes that further discovery is not warranted and an evidentiary hearing is unnecessary. The undersigned has sufficient information to issue a recommendation on the issue of arbitrability. For the reasons that follow, the motion to compel arbitration should be granted, the motion to dismiss should be denied without prejudice as moot, and this case should be stayed.

## I. The Complaint

Plaintiff is suing his former employer, S&D Carwash Management LLC, also known as "Quick Quack Carwash" (hereafter "Quick Quack") for violations of the Family Medical Leave Act (FMLA), violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), defamation, civil conspiracy, and failure to provide records. ECF No. 1 at 1.[1] Plaintiff also names as individual defendants several employees of Quick Quack, including his manager (Jac Lebbs), his manager's manager (Joe Steele), his human resources executive (Kenny Williams), Steele's manager (Matt Nichols), a business manager working under Lebbs (Cliff Marian), and an HR specialist working under Williams (Dina Katsel). Id. at 2-3.

Plaintiff was hired by Quick Quack in January of 2020 as a "data person," responsible for collecting all of Quick Quack's data into one place and analyzing it for business intelligence. Id. at 4. Plaintiff was never disciplined during the first five years of his employment. Id. Plaintiff has Autism Spectrum Disorder Level 1, and Quick Quack was made aware of a request for related accommodations by plaintiff since before his diagnosis in 2020. Id. Since 2022, Quick Quack

---

[1] Plaintiff attempted to file an unauthorized First Amended Complaint, which has been stricken. ECF Nos. 30, 54. Accordingly, plaintiff proceeds with the initial complaint filed May 5, 2025. ECF No. 1.

offered twice yearly bonuses to the plaintiff and other similarly situated employees. Id.

In summer of 2024, the majority of plaintiff's 40-person department met for a summit in Rocklin, California. Id. At the summit, plaintiff suggested to an unhappy co-worker, Chris Smith, that he should form a union if he was unhappy. Id. Plaintiff also overheard coworkers wondering aloud if bonuses would be announced, after the company had reduced earlier bonuses due to cash flow issues. Id. at 4-5. During a panel with Nichols, employees were invited to ask questions. Id. at 5. When nobody else asked about bonuses, plaintiff felt obliged to do so on behalf of his coworkers. Id. After the panel, plaintiff was admonished by defendant Lebbs for asking the bonus question "in that forum" because not everyone who was at the summit received bonuses. Id.

That night at a dinner with Marian, Lebbs, Steele, and Smith, plaintiff raised the issue that he was getting paid the same as Smith, who was his junior. Id. Steele said he would be willing to have a salary conversation if plaintiff felt underpaid, and in November of 2024, plaintiff was given a 7% raise. Id. However, around the same time, benefits for 2025 were announced, and they were significantly more expensive with higher deductibles. Id.

In February of 2025, a departmental colleague posted on a public forum that she had bipolar disorder and was denied accommodation, and then shortly after posted that she had not been paid a promised bonus. Id. When plaintiff messaged the college, he found out she had been removed from the forum. Id. The colleague suddenly left the company shortly after. Id. This made plaintiff concerned about work conditions. Further, later that month, plaintiff learned that Smith had also received a 7% pay raise that past November, so plaintiff was still making the same or less than his junior colleague. Id. at 6. Smith left the company, and plaintiff realized that it would be up to him to start a union. Id.

On February 20, 2025, plaintiff emailed Williams and asked if they could discuss who would be in a bargaining unit, and how he could get contact information for everyone. Id. On February 21, 2025, Lebbs put a meeting on plaintiff's calendar for February 27, 2025, titled "Organization Improvements." Id. Plaintiff attended the meeting prepared to address ways to improve the company, but the meeting turned out to be an attack on plaintiff by Lebbs and Steele.

Id. They accused plaintiff of being incompetent in his work and providing bad customer service. Id. at 6-7. Plaintiff denied the allegations. Id. at 7. On February 28, plaintiff emailed the general human resources inbox to request assistance in forming a bargaining unit and getting contact information for potential union members. Id. at 7. Plaintiff never received a response. Id.

On March 4, at plaintiff's weekly meeting with Lebbs, plaintiff was informed that he was being put on a performance improvement plan (PIP). Id. Plaintiff alleges the PIP contained false statements regarding his performance and rule violations. Id. at 8. Plaintiff told Lebbs that childcare issues related to his special needs daughter were impacting his ability to work because his wife had to work away from home two days each week. Id. Plaintiff raised this issue again at approximately 20 meetings. Id. On March 16, 2025, plaintiff made his first pro-union message on Quick Quack's electronic forum. Id. On March 17, he completed an affidavit with the NRLB for illegal retaliation and interference. Id. On March 21, plaintiff emailed the general human resources inbox asking for all employee records and wage statements. Id. As of the time plaintiff filed the complaint, the records had still not been provided. Id.

At weekly check-ins, Lebbs had been telling plaintiff he was doing "much better." Id. at 9. Then, on April 10, 2025, Lebbs made disparaging statements about plaintiff in front of another employee, attacking plaintiff's competence and accusing him of unfinished work. Id. At this meeting, plaintiff was asked to sign a second PIP containing false statements. Id. at 10. Plaintiff asked instead to be put on FMLA leave, and Lebbs agreed, but was told that while on FMLA he would not have access to Quick Quack's electronic forums. Id. On April 11, plaintiff emailed the human resources inbox demanding the discipline issued during protected FMLA leave be withdrawn. Id. Even though plaintiff sent multiple emails and left three voicemails, he did not receive a response until April 17. Id. In that response, Katsel informed plaintiff that Quick Quack would not withdraw the discipline and refused to provide plaintiff access to the company's electronic forum. Since then, plaintiff's requests have gone unanswered. Id. Defendants have given raises to 50% of the four employees engaged in unionization efforts, while defaming and disciplining the other 50%. Id.

////

**II. Motion to Compel Arbitration**

Defendants move to compel arbitration of plaintiff's claims subject to the terms and conditions of Quick Quack's Arbitration Agreement, which defendants contend plaintiff signed at the outset of employment. ECF No. 11-1 at 7. Plaintiff contends that a valid arbitration agreement does not exist because he did not sign the Agreement. ECF No. 39 at 2. To clarify the issue, the court ordered defendant to serve a declaration from a custodian of records for Paycom, the third party entity Quick Quack uses to process employee onboarding and human resource related documents. ECF No. 41 at 3. The undersigned also gave plaintiff the opportunity to file a request for leave to propound specific discovery for the court's review. Id. The required declaration was submitted on April 10, 2026. ECF No. 50. The undersigned finds no further discovery is necessary to evaluate the motion.

A. Arbitration Must be Compelled

The Federal Arbitration Act ("FAA") limits the district court's role in deciding a motion to compel arbitration "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." Cox v. Ocean View Hotel, Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citation and quotation omitted). The party moving to compel arbitration bears the burden of demonstrating that these two elements are satisfied. Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015). If a valid arbitration agreement exists, the district court must enforce the arbitration agreement according to its terms. Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004).

1. A Valid Arbitration Agreement Exists

To determine whether an arbitration agreement is valid, satisfying the first prong of the mandatory arbitrability analysis, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996), Villarreal v. Perfection Pet Foods, LLC, No. 1:16-cv-01661-LJO-EPG, 2017 WL 1353802, at *4 (E.D. Cal. Apr. 10, 2017). Because the agreement to arbitrate is a contract, a court will not grant a motion to compel arbitration unless it finds that there is a "clear agreement" to arbitrate. Davis v. Nordstrom, Inc.,

755 F.3d 1089, 1092-93 (9th Cir. 2014). "In California, a 'clear agreement' to arbitrate may be either express or implied in fact." Id.

Here, the undersigned concludes that a valid arbitration agreement exists. Defendants submitted the declaration of Caitlyn Carr, an IT Security Operations Manager at Paycom Software, Inc. ECF No. 50 at 2. Carr testified that Paycom provides payroll and human resources services to businesses, including Quick Quack. Id. Carr is familiar with Quick Quack's account and can view employees' Paycom accounts, profiles, and backend data. Id. Carr testified that she accessed a copy of the "2020 Arbitration Agreement," electronically signed by plaintiff Mark Adams, from the Paycom portal and attached it to her declaration as Exhibit A. ECF No. 50 at 5. Carr explained that she could authenticate plaintiff's signature because when "a new hire or employee enters his or her signature acknowledging and agreeing to a given document, a signature record is generated and logged in Paycom's backend." Id. The record includes specific data, including a unique identifying code, a description of the document, whether a signature was required and received, and the employee's IP address at the time of signing. Id. To verify the copy of the Agreement signed by plaintiff, Carr generated a report using an internal proprietary query tool and attached the audit file as Exhibit B to her declaration. Id. at 5. The report exhibits Adams' electronic acknowledgement and signature on the "2020 Arbitration Agreement PDF" and specifies at on 1/19/2021 at 13:49 employee code 7122 electronically signed the file. Id. A unique digital signature was assigned to Adam's account; Carr verified the documents in the account. Id.

Plaintiff argues that the declaration is insufficient because it does not contain enough information, and because Carr lacks personal knowledge due to the fact that she was not physically present during plaintiff's onboarding process. ECF No. 51 at 2. First, the undersigned finds the information contained in the declaration sufficient. Second, Carr did not need to be present at plaintiff's onboarding to substantiate her testimony regarding the validity of the Arbitration Agreement because she had personal knowledge as to how such documents, and Adams' Agreement in particular, are created, stored, and verified.

In federal court the federal rules of evidence apply. See Fed. Rs. Evid. 101(a), 1101;

Primiano v. Cook, 598 F.3d 558, 563 (9th Cir. 2010); United States v. Yin, 935 F.2d 990, 996 (9th Cir. 1991). To authenticate evidence, a party must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); American Fed'n of Musicians of the U.S. v. Paramount Pictures Corp., 903 F.3d 968, 976 (9th Cir. 2018); see United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir. 1996). The party submitting the evidence "need only make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification." American Fed. of Musicians, 903 F.3d at 976; Workinger, 90 F.3d at 1415. There are many methods of authenticating evidence, see Fed. R. Evid. 901(b), and the proponent's burden has been characterized as "not high." United States v. Recio, 884 F.3d 230, 236-37 (4th Cir. 2018); Kalasho v. BMW of N. Am., LLC, 520 F.Supp.3d 1288, 1293 (S.D. Cal. 2021).

Judges in this district have held that where the plaintiff did not specifically recall signing an arbitration agreement, but the agreement was presented and authenticated by the head of Human Resources, the agreement was enforceable. Prostek v. Lincare Inc., 662 F. Supp. 3d 1100, 1111 (E.D. Cal. 2023). Here, defendants have submitted a detailed declaration authenticating the Arbitration Agreement, which bears plaintiff's signature. ECF No. 50 at 9. Plaintiff's conclusory denials that the Agreement exists cannot overcome defendants' clear showing, by competent evidence, to the contrary.

2. The Agreement Covers the Dispute at Issue

The second prong of the arbitrability analysis also favors compelling arbitration: plaintiff's claims are plainly encompassed by the arbitration agreement. See Cox, 533 F.3d at 1119. Here, the Agreement expressly covers employment-related disputes "including but not limited to, claims of unlawful harassment or discrimination, wrongful demotion, defamation, wrongful discharge, breach of contract, invasion of privacy, or claims for violation of state, local, or federal wage and hour laws (with the exception of PAGA claims in California)." ECF No. 50 at 8. Plaintiff's complaint asserts employment-related grievances, and he does not argue otherwise. Because a valid arbitration agreement exists, and this agreement encompasses plaintiff's claims, the court must enforce the agreement. Cox, 533 F.3d at 1119.

B. <u>This Case Must be Stayed</u>

Where arbitration is compelled, the FAA requires the court to stay this action pending arbitration. 9 U.S.C. § 3. The U.S. Supreme Court recently confirmed that when a federal court finds a dispute subject to arbitration and a party requests a stay, the court "does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." <u>Smith v. Spizzirri</u>, 601 U.S. 472, 475-76 (2024). Rather, the FAA requires a stay. The word "shall" in Section 3 of the FAA creates a mandatory obligation, and the stay remains in place "until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3; <u>Smith</u>, 601 U.S. at 476-78.

## III. Motion to Dismiss

Defendants filed a motion for partial dismissal of the complaint on the same day that they filed their motion to compel arbitration. ECF No. 12. Because the undersigned concludes arbitration must be compelled and this case must be stayed, it is recommended that the motion to dismiss (ECF No. 12) be DENIED without prejudice as MOOT. The motion may be re-filed if this case returns to this court for any reason following the conclusion of arbitration.

## IV. Pro Se Plaintiff's Summary

The magistrate judge has reviewed the evidence submitted and finds that the declaration submitted by the defendants is enough to show that you did sign an arbitration agreement. No further evidence is necessary. Because you signed the agreement, the magistrate judge is recommending that this case be stayed, and that you and defendants proceed with arbitration. It is also recommended that the motion to dismiss be denied for now while you move forward with arbitration. If you disagree with these recommendations, you may file objections within 14 days. The District Judge will make the final decision.

## V. Recommendation

It is hereby RECOMMENDED that defendants' motion to compel arbitration (ECF No. 11) be GRANTED, that the motion to dismiss (ECF No. 12) be DENIED without prejudice as MOOT, and that this case be STAYED pending arbitration.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991). **Due to exigencies of the court's calendar, extensions of time to object are disfavored. Objections need only specify the portion(s) of the Findings and Recommendations to which objection is made. Further briefing of the issues is not required.**

DATED: August 21, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE